**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

AZIZA DYER,

                              Plaintiff,

          -against-

MAJOR FOOD GROUP LLC, 375 PARK AVE LLC,
375 PARK FOOD LLC, MARIO CARBONE, RICH
TORRISI, JEFF ZALAZNICK, WILLIAM NAZAR,
CHRISTINA COZAC, NICOLE KOKARAM,

                            Defendants.

No.

**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

-------------------------------------------------------------------- X

        Plaintiff Aziza Dyer, as and for her complaint, by her attorneys, Beldock Levine &

Hoffman LLP, alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

        1.      Plaintiff, a Black and Latinx mother and former employee of The Pool, a restaurant

operated by the Major Food Group LLC, 375 Park Ave LLC, and 375 Park Food LLC, (referred

to collectively herein as Plaintiff's "employer"), brings this action alleging violations of, *inter alia*,

Title VII, 42 U.S.C. § 2000e *et seq.,* and applicable state and city law and seeking damages for

discriminatory and retaliatory conduct.

        2.      Plaintiff is a hard-working and dedicated employee who faced continued hostile,

discriminatory, and retaliatory conduct by managers and supervisors at The Pool because of her

race, sex, and pregnancy-related conditions, and for engaging in the protected activity of taking

leave related to her pregnancy, childbirth, and related medical conditions.

**JURISDICTION**

3.      Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1331 and 1343(a)(3) and

(4) as this claim arises under the laws of the United States, including under § 717 of Title VII, 42

U.S.C. § 2000e *et seq.*

4.      Plaintiff Aziza Dyer filed a charge of discrimination and retaliation with the U.S.

Equal Employment Opportunity Commission ("EEOC") on December 9, 2019. On January 2,

2020, the EEOC issued Plaintiff a Notice of Right to Sue. On January 6, 2020 Plaintiff received

the Notice of Right to Sue by mail. On January 7, 2020, Plaintiff's counsel received the Notice of

Right to Sue by mail. This complaint is timely filed pursuant to the Notice of Right to Sue.

5.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to hear

Plaintiff's state and city law claims.

**VENUE**

6.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because

Defendants maintain its principal place of business in New York, New York.

7.      Venue lies in this judicial district under §1391(b)(2) because a substantial part of

the events or omissions in this action occurred within the Southern District of New York.

**PARTIES**

8.      Plaintiff Aziza Dyer is a Black and Latinx mother and a citizen of the United States

and the State of New York. At all times relevant to this complaint, Ms. Dyer was a resident of the

State of New York, City of New York, County of Kings.

9.      The Major Food Group, LLC ("MFG") is a limited liability company organized

under the laws of the state of Delaware that, upon information and belief, operated The Pool, a

restaurant located at 375 Park Avenue, New York, New York 10022. Upon information and belief,

The Pool is no longer operational and has combined with a neighboring restaurant called The Grill. Upon information and belief, and according to its website, MFG is a "hospitality company" with locations in New York, Las Vegas, Tel Aviv, and Hong Kong. MFG's principal place of business is 23 Waverly Place, New York, New York, 10003.

10.     Defendant 375 Park Ave, LLC is a limited liability company organized under the laws of the state of New York. 375 Park Ave LLC has its principal place of business at 375 Park Avenue, New York, New York 10022.

11.     Defendant 375 Park Food, LLC is a limited liability company organized under the laws of the state Delaware. 375 Park Food has its principal place of business at 375 Park Ave LLC has its principal place of business at 375 Park Avenue, New York, New York 10022.

12.     At all relevant times, Defendant Mario Carbone is and was a managing partner of MFG. His place of business is 23 Waverly Place, New York, New York, 10003.

13.     At all relevant times, Defendant Rich Torrisi is and was a managing partner of MFG. His place of business is 23 Waverly Place, New York, New York, 10003.

14.     At all relevant times, Defendant Jeff Zalaznick is and was a managing partner of MFG. His place of business is 23 Waverly Place, New York, New York, 10003.

15.     At all relevant times, Defendant William Nazar is and was the Chief Operative Officer of MFG. His place of business is 23 Waverly Place, New York, New York, 10003.

16.     At all relevant times, Defendant Cristina Cozac is and was the General Manager of The Pool. Her place of business is 23 Waverly Place, New York, New York, 10003.

17.     At all relevant times, Defendant Nicole Kokaram is and was the Director of Human Resources at MFG. Her place of business is 23 Waverly Place, New York, New York, 10003.

18.     Defendant MFG is vicariously liable under the doctrine of *respondeat superior* for state law claims with respect to actions at issue of the Individual Defendants.

## FACTUAL ALLEGATIONS

19.     Plaintiff, Aziza Dyer, a 33-year-old, Black and Latinx mother worked in the restaurant and service industry for eight years.

20.     From August 2017 to February 2019, Plaintiff worked as a Lounge Captain at The Pool, a restaurant operated by the Major Food Group hospitality company, 375 Park Ave LLC, and 375 Park Food LLC, (referred to collectively herein as Plaintiff's "employer").

21.     Plaintiff's job responsibilities as a Lounge Captain included, among other things, waitressing in the lounge area, instructing service staff, and communicating with the kitchen staff.

22.     Beginning in late 2017, Plaintiff began experiencing discriminatory and retaliatory treatment from executives and higher-level officials at The Pool. This discrimination also led to a hostile work environment based on her race, sex, and pregnancy related conditions. She was subjected to retaliation after complaining.

**Discriminatory and Retaliatory Treatment During Pregnancy**

23.     In the early months of Plaintiff's employment at The Pool, Lounge Captains, who were all female, were expected to wear high heeled stiletto shoes as a part of their uniform which caused pain and bleeding to Plaintiff's feet and the feet of other Lounge Captains during the course of their work days.

24.     The Lounge Captains were also required to wear one of the three available uniforms which often went unlaundered and were not allowed to be removed from the restaurant.

25.     On December 7, 2017, Plaintiff emailed the General Manager of The Pool, Cristina Cozac, that she had just learned she was approximately four months pregnant and

explained that her pregnancy was the reason she had been getting sick in recent weeks. Plaintiff also informed Ms. Cozac that she would be undergoing a procedure related to her pregnancy and offered to provide medical documentation in order to take two days off that week. Plaintiff was later told by a former manage that Ms. Cozac believed she was, "either an idiot or full of it."

26. On February 16, 2018, Plaintiff, who was visibly six months pregnant, received a disciplinary "Final Warning" from Nicole Kokaram, Director of Human Resources at MFG. The Final Warning alleged, *inter alia*, that Plaintiff's "performance [was] less than desirable" and she had received "multiple coaching sessions." These allegations were unfounded and pretextual based on her appearance as a pregnant woman interacting with customers in a restaurant and lounge setting.

27. Though the "Final Warning" implied prior disciplinary action, Plaintiff had never received any disciplinary notices prior to informing Ms. Cozac that she was pregnant.

28. On February 19, 2018, Plaintiff responded to the disciplinary notice by email to Ms. Cozac and Ms. Kokaram disputing the allegations against her and noting that she had not received any of the formal or informal coaching sessions as mentioned in the notice.

29. This email prompted a meeting in the following days with Ms. Kokaram and Ms. Cozac at which Plaintiff was told, in sum and substance, "No one cares if you're pregnant. They don't have to. It's like when you break your arm, no one cares."

30. On March 8 and 23, 2018, Plaintiff received additional disciplinary notices that were unfounded and pretextual based on her appearance as a pregnant woman.

31. The March 23, 2018 notice alleged that Plaintiff had been late to her shift. However, Plaintiff had explained to Ms. Cozac in person that she was experiencing morning sickness and

had let Ms. Cozac know that she was experiencing traffic on her commute to work and would be less than ten minutes late.

32.    Plaintiff was singled out for discipline because of her race and pregnancy, and upon information and belief, the white Lounge Captains who were not pregnant did not receive such disciplinary notices for alleged lateness even though they were frequently late.

33.    On March 25, 2018, The Pool hosted a celebrity event at which a male celebrity groped Plaintiff. Plaintiff reported the incident to the manager of The Pool, Sarah Garland. Ms. Garland did nothing to address the incident. Ms. Garland said, in sum and substance, there was "no way someone like that would do something like that to a person like [Plaintiff]," apparently referring to Plaintiff's appearance as a pregnant woman and/or her race.

34.    On April 11, 2018, Plaintiff's physician, Dr. Francesco Callipari, provided her with a note which recommended that, because she was 32 weeks pregnant, she receive a reasonable accommodation of sitting for ten minutes every two hours.

35.    Plaintiff provided Dr. Callipari's letter in person to Ms. Cozac who responded by saying that it was an HR matter and she had nothing to with it.

36.    Ms. Cozac told Plaintiff that she would provide the letter to Ms. Kokaram.

37.    Plaintiff did not receive a response regarding her requested accommodation.

38.    On May 1, 2018, Plaintiff received an email from Ms. Kokaram acknowledging that Ms. Cozac had discussed Plaintiff's intent to take leave in anticipation of childbirth.

39.    On May 2, 2018, Dr. Callipari provided Plaintiff with another note that recommended she cease working because she was then 36 weeks pregnant and diagnosed her with elevated blood pressure.

40.    Plaintiff provided Dr. Callipari's second note via email that day to Ms.

Kokaram and Ms. Cozac informing them that she would go to The Pool on May 4, 2018 to submit paperwork sent by Ms. Kokaram earlier that week, but she did not receive a reply.

41.     Plaintiff took work-approved leave on May 12, 2018 and went back to the restaurant on May 12, 2018 to pick up her final paycheck prior to starting her leave.

**Discriminatory and Retaliatory Interference with Leave**

42.     On May 22, 2018, Plaintiff received notice from Ms. Kokaram that, despite not being scheduled for work shifts or receiving pay checks, Plaintiff was required to pay her weekly insurance premiums.

43.     Plaintiff would not be able to afford these insurance premiums without paid leave.

44.     In the evening of May 29, 2018, Plaintiff submitted a completed New York State Paid Family Leave ("PFL") form as sent by HR, as well as supplementary documents.

45.     On May 31, 2018, Ms. Kokaram told Plaintiff that she did not qualify for PFL as the leave is for individuals seeking to take care of family members. Ms. Kokaram attached a different set of paperwork for Plaintiff to complete, including a New York State Short-Term Disability ("STD") form.

46.     On May 31, 2018, Plaintiff gave birth to a son.

47.     On June 1, 2018, Plaintiff replied including a link to the PFL website and explained that, as the mother of a newborn, she qualified for PFL.

48.     On June 7, 2018, Plaintiff requested an update regarding the status of her PFL, asking if it had been filed independently as she was now being asked to submit STD forms.

49.     On June 15, 2018, Plaintiff submitted her completed STD paperwork.

50.     On June 25, 2018, Plaintiff emailed Ms. Kokaram asking if the PFL paperwork

was filed. Plaintiff explained that she was growing anxious because she had not heard anything from the insurance company.

51.     On June 25, 2018, Ms. Kokaram replied by email stating that, "all forms were filed."

52.     On July 3, 2018, Plaintiff again followed up regarding her PFL timeline and was told it takes a few weeks for PFL to go through so Ms. Kokaram could not be sure of the status.

53.     On July 3, 2018, Ms. Kokaram confirmed receipt of checks Plaintiff sent for two weeks of health insurance coverage and asked how Plaintiff would like to proceed with paying for seven more weeks of insurance premiums.

54.     On July 6, 2018, Ms. Kokaram asked if Plaintiff would be returning to work on July 12, 2018.

55.     On July 8, 2018, Plaintiff notified Ms. Kokaram that she was addressing health concerns with her doctor concerning both her and her newborn, after which she would notify her employer of when it was medically reasonable for her to return.

56.     On July 9, 2018, Ms. Kokaram asked for additional insurance payments and stated she had not received payment except for the two weeks' checks. Ms. Kokaram stated that Plaintiff's doctor indicated that she would be able to return to work on July 12, 2018, though she had never discussed with her employer or her doctor the possibility that she would return on July 12, 2018. Ms. Kokaram also requested Plaintiff submit formal documentation from her physicians if that date had changed.

57.     On July 10, 2018, Plaintiff emailed Ms. Kokaram that she sent the next required health insurance payments. Plaintiff also noted that she would not be returning on July 12, 2018

and was unsure how they had determined that date. Plaintiff reminded Ms. Kokaram that she was allowed eight weeks of paid leave per New York State Law and would be taking the full amount allowed. Plaintiff noted her anxiety about running out of financial resources as she was now approaching the second month without a paycheck and would barely be able to make rent let alone pay any outstanding insurance premiums.

58.     On July 16, 2018, Plaintiff asked Ms. Kokaram for the insurance company's contact information to discuss the status of her PFL. Neither Ms. Kokaram nor anyone from HR responded to this request.

59.     On July 17, 2018, Plaintiff emailed Ms. Kokaram that she had found the insurance company's information and was made aware that her employer had not submitted her paperwork as Ms. Kokaram had indicated on June 25, 2018. The insurance company received only part of the claim on July 11, 2018.

60.     On July 17, 2018, Plaintiff received an email from Ms. Kokaram acknowledging the failure to submit her claim. Ms. Kokaram further informed Plaintiff that it would now be expedited and that her health insurance payments would be put "on the back burner" until the issue was resolved. Ms. Kokaram informed Plaintiff that she was in touch with the insurance carrier to avoid further lapses in coverage.

61.     Upon information and belief, Ms. Kokaram did not follow through on these actions.

62.     On July 18, 2018, Plaintiff received an email from a HR Generalist and Benefits Coordinator, Vanessa Rose, requesting insurance payments for medical ($1,116.24), dental ($88.56), and vision ($14.32) to be made by the end of the coming week or those benefits would be cancelled, despite Ms. Kokaram's assurance that those payments would be put "on

the back burner."

63.    On July 19, 2018, Plaintiff sent an email to Ms. Kokram to confirm that her claim was now properly filed in its entirety to which Ms. Kokram replied that it was.

64.    On July 20, 2018, Plaintiff contacted Chief Operating Officer of MFG, William Nazar, to make him aware of Ms. Kokaram's failure to submit her PFL paperwork.

65.    Plaintiff did not receive a response from Mr. Nazar.

66.    On July 20, 2018, Ms. Kokaram requested Plaintiff resubmit her PFL paperwork alleging that the forms were unsigned. She also instructed her to file Family and Medical Leave Act ("FMLA") paperwork.

67.    On July 23, 2018, Plaintiff replied noting she had in fact signed the forms and attached the signed forms. Plaintiff reminded Ms. Kokaram that she had already taken unpaid leave and did not wish to take another leave as she could not file PFL and FMLA concurrently. Ms. Kokaram responded that day and attached paperwork regarding Plaintiff's PFL claim start date which Plaintiff had previously endorsed and requested that Plaintiff endorse the paperwork again.

68.    On July 24, 2018, Plaintiff spoke with a PFL representative to clarify the average weekly wage laws and sent an email to Ms. Kokaram informing her that she believed her calculations were in error and that the average weekly wage should be calculated based on an average of the last eight weeks the employee actually worked, rather than last eight weeks before the birth of the child.

69.    On August 22, 2018, Ms. Rose emailed Plaintiff notifying that her return date was to be August 27, 2018.

70.    Though she had repeatedly informed Ms. Kokaram and Ms. Rose of the need

to consult with her physician, Plaintiff was nevertheless denied any accommodation or flexibility with respect to her return date.

71.    On August 24, 2018, Plaintiff emailed Ms. Rose regarding her disappointment with how her leave was dealt with by her employer and questioning why her first two weeks' insurance payments were never processed.

72.    On August 24, 2018, Ms. Kokaram emailed Plaintiff noting that the two weeks' of payments that she had already submitted were not processed by the accounting department.

73.    On August 25, 2018, Ms. Rose emailed Plaintiff alleging that her first two weeks' checks were never received, though Ms. Kokaram confirmed receipt of those checks on July 9, 2018.

**Discriminatory and Retaliatory Treatment Following Pregnancy**

74.    Plaintiff's new schedule excluded the more lucrative shifts and events, and Plaintiff was often the only Lounge Captain not scheduled for high profile events.

75.    On August 27, 2018, Plaintiff returned to work as instructed, without medical clearance.

76.    Via an undated letter following Plaintiff's return to work, Plaintiff received a demand signed by Ms. Kokaram for payment of thirteen weeks of insurance premiums ($1,813.89 for medical, $143.91 for dental and $23.27 for vision), cancelling her insurance retroactively to August 1, 2018, and noting that $152.39 would be withheld from her paycheck going forward until the insurance payments were paid.

77.    On September 24, 2018, Plaintiff sent an email and delivered copies of a letter to Mario Carbone, Rich Torrisi, and Jeff Zalaznick, Managing Partners of MFG, detailing the laws which she believed were violated based on her treatment as a pregnant woman and new mother.

In this letter Plaintiff noted, *inter alia*, that:

- She was never provided with notice of her rights as an employee pursuant to Workers' Compensation Law § 229;

- Under 12 NYCRR § 380.5.1(a), an employer must complete the PFL form and return it to the employee within three days;

- Her employer improperly terminated her health care under 12 NYCRR § 380-7.3(d); and

- Her employer improperly deducted her wages under Labor Law § 193 and 12 NYCRR § 195.

78.     On September 25, 2018, Plaintiff was given an agreement to sign from Ms. Kokaram on behalf of 375 Park Ave, LLC that agreed to "cover [her] portion of all unpaid insurance premium payments from June through the present . . . in exchange for a signed original copy of [the] letter agreement, releasing any claims [she had] or may have against [375 Park Ave]" and attaching a copy of Section 206-c of the New York State Labor Law, Guidelines Regarding the Rights of Nursing Mother to Express Breast Milk in the Workplace. Plaintiff did not sign this agreement.

79.     Immediately upon returning to work, Plaintiff was not allowed to leave the restaurant floor to express breast milk and was met with resistance by managers Sarah Garland and Marc Lamarre virtually every time she requested time to express.

80.     Plaintiff would at times leak breast milk through her uniform because she was not permitted to leave the restaurant dining area to express.

81.     In or around October 2018, Plaintiff had been refused the accommodation of leaving the dining floor to expressing breast milk so often, she ceased breast feeding earlier that

she would have otherwise had she been granted the accommodation of expressing while at work.

82.     In December 2018, the staff uniforms were changed to a more form fitting cut and while Plaintiff still fit her uniform after having her child, Ms. Cozac repeatedly walked behind her pulling her skirt down, insisting she order a larger size.  Ms. Cozac ordered Plaintiff a larger size explaining that she did not like that Plaintiff did not look the same as "the other girls." She told Plaintiff, in sum and substance, that "They are more straight up and down and sleek, you should look more like that." Plaintiff took this comment and Ms. Cozac's treatment of her was based on her race and status as a new mother.

83.     On December 20, 2018 Ms. Cozac gave Plaintiff a positive verbal evaluation, noting that since Plaintiff had been back to work, she was impressed with how she was performing.

84.     However, that same day, Mr. Lamarre began screaming at staff for standing around waiting to be dismissed after their shifts. Plaintiff was in the lounge area waiting to leave after her shift and Mr. Lamarre yelled at her for asking if she could leave.

85.     On December 20, 2018, Plaintiff received another disciplinary notice that mischaracterized her interaction with Mr. Lamarre. Plaintiff responded to the notice by email and met with Ms. Kokaram as well. On the way to the meeting, Ms. Cozac again praised Plaintiff's work since returning from leave.

86.     On December 21, 2018, Plaintiff did not receive her paycheck. After informing Ms. Cozac and Ms. Kokaram, Plaintiff received a phone call from Ms. Cozac and was instructed to meet her at midnight to receive a portion of her paycheck in cash.

87.     On February 14, 2019, despite her successful performance after returning to work following her pregnancy, Plaintiff received a notice of termination signed by Ms.

13

Kokaram again based on unfounded and pretextual allegations.

**Discrimination Based on Race**

88.     Throughout her employment as a Lounge Captain, Plaintiff was the only woman of color in her position. All the other Lounge Captains at The Pool were white women.

89.     The Dining Captains, employees who were responsible for executing fine dining in the dining room area of The Pool, were predominantly white men and received higher pay, though many of the responsibilities of the Lounge Captains, like executing service, overlapped with those of the Dining Captains. Only two of the approximately one dozen Dining Captains were men of color.

90.     One of the two Dining Captains of color was also arbitrarily terminated after returning from a temporary medical leave.

91.     Additionally, one of the managers at The Pool made derogatory comments about a Mexican employee stating, in sum and substance, "You can be older and slow, but you can't be old, slow, and Mexican."

92.     On the day Plaintiff received her February 16, 2018 disciplinary notice, upon information and belief, a woman was hired as a permanent replacement for Plaintiff after her employer learned of her pregnancy.

93.     The disciplinary allegations against Plaintiff by her employer, the delay in filing her PFL, and her termination were discriminatory and made in retaliation for her protected activity of taking PFL.

94.     Because of her protected status as a woman, a pregnant woman, a new mother, and a Black and Latinx woman, Plaintiff was treated in a discriminatory manner by her employer.

95.     The foregoing conduct by Plaintiff's employer created a hostile work environment that was consistently humiliating and altered her employment for the worse, culminating in her termination.

96.     The foregoing actions by Plaintiff's employer have caused damage to Plaintiff, including, but not limited to: lost compensation and benefits, damage to her career and reputation, and physical and emotional distress.

**Defendants Carbone, Torrisi, Zalaznick, and Nazar Failed to Act**

97.     Though Defendants Carbone, Torrisi, Zalaznick, and Nazar had notice and direct knowledge of the ongoing discriminatory and retaliatory conduct, including, but not limited to, Plaintiff's discipline, delay in paid leave, and termination, they knowingly and ultimately failed to act to stop the discrimination and retaliation against Plaintiff. Defendants Carbone, Torrisi, and Nazar were frequently present at The Pool and, upon information and belief, had direct knowledge of the personnel decisions made by Ms. Cozac, Ms. Garland, and Mr. Lamarre.

## DAMAGES

98.     Defendants' unlawful actions have subjected Plaintiff to discrimination, retaliation, and a hostile work environment in violation of federal, state, and city laws.

99.     As a result of Defendants' actions, Plaintiff suffered injuries and damages, including but not limited to economic loss and past and future income and benefits.

100.    As a result of Defendants' actions, Plaintiff suffered injuries and damages, including but not limited to damage to her personal and professional name, profession, career, and reputation.

101.    As a result of Defendants' actions, Plaintiff suffered physical injuries and damages, including but not limited to: physical pain and suffering; emotional distress and mental anguish; embarrassment; indignity; and inconvenience.

102.    Defendants' actions were intentional, unlawful, malicious, wanton, reckless and in bad faith.

## FIRST CAUSE OF ACTION
### Discrimination on the Basis of Race and Sex
### in Violation of Title VII, 42 U.S.C. 2000e *et seq.* and the Pregnancy Discrimination Act

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

104.    At all relevant times, Plaintiff was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

105.    Defendants MFG, 375 Park Food LLC, and 375 Park Ave LLC are "employers" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

106.    42 U.S.C. § 2000e(k) provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."

107.    By the actions described above, Defendants MFG, 375 Park Food LLC, and 375 Park Ave LLC have discriminated against Plaintiff based on her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*

108.    The Defendants also failed to accommodate Plaintiff as a result of her pregnancy and pregnancy-related illnesses as set forth above.

109.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**SECOND CAUSE OF ACTION**
**Hostile Work Environment**
**in Violation of Title VII, 42 U.S.C. 2000e *et seq.***

110.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

111.    By the actions described above, Defendants MFG, 375 Park Food LLC, and 375 Park Ave LLC created a hostile work environment for Plaintiff and took adverse employment actions against Plaintiff by reducing the number of lucrative shifts in her schedule, disciplining and ultimately terminating Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*.

112.    As a result of Defendants' actions, Plaintiff has suffered and continue to suffer the injuries and damages set forth above.

**THIRD CAUSE OF ACTION**
**Retaliation**
**in Violation of Title VII, 42 U.S.C. 2000e *et seq.***

113.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

114.    By their actions described above, Defendants have retaliated against Plaintiff on account of her protected activity of seeking paid leave related to her pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*.

115.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**FOURTH CAUSE OF ACTION**
**Discrimination on the Basis of Race, Sex, and Pregnancy-Related Conditions**
**in Violation of New York State Human Rights Law**
**N.Y. Exec. Law §§ 290 *et seq.***

116.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

117.    The NYSHRL prohibits an employer from discriminating against an employee in the terms and conditions of his employment on the basis of race, sex, and pregnancy-related conditions.

118.    Plaintiff belongs to protected classes on the basis of her race, sex, and pregnancy-related condition.

119.    Defendants engaged in intentional discrimination in the terms and conditions of Plaintiff's employment.

120.    Defendants violated the NYSHRL in that they discriminated against Plaintiff because of her race, sex, and pregnancy-related conditions.

121.    The Individual Defendants aided and abetted the discrimination against Plaintiff.

122.    The unlawful conduct of the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

123.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**FIFTH CAUSE OF ACTION**
**Hostile Working Environment**
**in Violation of New York State Human Rights Law,**
**N.Y. Exec. Law §§ 290 *et seq.***

124.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

125.    Defendants' conduct as alleged above created and constituted a hostile work environment in violation of New York State law.

126.    The Individual Defendants aided and abetted hostile work environment.

127.    The unlawful conduct of the individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

128.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**SIXTH CAUSE OF ACTION**
**Retaliation for Engaging in Protected Activity**
**in Violation of New York State Human Rights Law,**
**N.Y. Exec. Law §§ 290 *et seq.***

129.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

130.    New York State Laws prohibits an employer from retaliating against employees who file a complaint of discrimination or oppose practices forbidden under NYSHRL.

131.    By their actions, Defendants retaliated against Plaintiff.

132.    The Individual Defendants aided and abetted the unlawful retaliation against Plaintiff.

133.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**SEVENTH CAUSE OF ACTION**
**Discrimination on the Basis of Race, Sex, and**
**Pregnancy, Childbirth, or Related Medical Conditions**
**in Violation of New York City Human Rights Law**
**NYC Administrative Code 8-107**

134.    Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

135.    The NYCHRL prohibits an employer from discriminating against an employee in the terms and conditions of her employment on the basis of race, sex, and pregnancy, childbirth, or related medical condition.

136.    Defendants violated the NYCHRL in that they discriminated against Plaintiff because of her race, sex, and pregnancy, childbirth, or related medical condition.

137.    Defendants aided and abetted the discrimination against Plaintiff.

138.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

## EIGHTH CAUSE OF ACTION
### Retaliation
### in Violation of New York City Human Rights Law,
### NYC Administrative Code 8-107

139.    Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

140.    The NYCHRL prohibits an employer from retaliating against an employee who has engaged in any activity protected by the NYCHRL.

141.    By their actions, Defendants retaliated against Plaintiff in violation of the NYCHRL for engaging in conduct protected by the NYCHRL, including, inter alia, taking leave related to her pregnancy.

142.    The Individual Defendants aided and abetted the discrimination against Plaintiff.

143.    As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

## JURY DEMAND

144.    Plaintiff demands a trial by jury.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court award her the following relief:

a. Judgment declaring that Defendants' acts violated Plaintiff's rights as secured by Title VII, 42 U.S.C. 2000e *et seq.*, NYSHRL and NYCHRL;

b. Compensatory damages in an amount to be determined at trial;

c. Punitive damages in an amount to be determined at trial;

d. Attorney's fees;

e. Interest, fees, costs, and disbursements; and

f. Such additional and further relief as is just and proper

Dated: New York, New York
    April 1, 2020

                BELDOCK LEVINE & HOFFMAN LLP
                99 Park Avenue, PH/26th Floor
                New York, New York 10016
                (212) 490-0400

By: _____
                Jonathan Moore
                Luna Droubi
                Marc Arena

                *Attorneys for Plaintiff*